IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

IN RE: )
CHRISTOPHER GEORGE JENSEN, )
 )
         Debtor. )
_____ )
 )
CHRISTOPHER GEORGE JENSEN, )
 )
         Plaintiff/Appellant, )
 )
v. ) No. 3:06-CV-203
 )
ROSANNE D. JENSEN, )
 )
         Defendant/Appellee. )

**MEMORANDUM OPINION**

Christopher George Jensen ("Debtor") appeals the bankruptcy court's ruling that a $45,000.00 credit card obligation arising from his divorce is in the nature of support, and thus nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5). For the reasons that follow, the judgment of the bankruptcy court will be reversed.

I.

*Background*

The Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on February 23, 2005. The case was later converted to a Chapter 7 bankruptcy.

On March 24, 2005, the Debtor initiated an adversary proceeding in the bankruptcy court against his former wife, defendant/appellee Rosanne D. Jensen

("Appellee"). The Debtor, *inter alia*, sought to have the above-referenced $45,000.00 credit card obligation discharged under § 523(a)(5).[1] The version of §523(a)(5) in effect on the date of the Debtor's bankruptcy filing made nondischargeable, in sum, debts that were "actually in the nature of alimony, maintenance, or support" to a spouse, child, or former spouse.[2]

The Debtor and Appellee were married for approximately twenty years. At the time of their divorce, the Debtor (who has an associate's degree in civil engineering) earned approximately $80,000.00 per year. Appellee (who has a high school diploma along with licenses in cosmetology and massage) was essentially unemployed. She was working as of the date of the bankruptcy court trial, earning $10.00 per hour. Her earning capacity has been, and continues to be, limited by purported diagnoses of fibromyalgia, chronic fatigue syndrome, and chronic vertigo.

In the divorce, Appellee was awarded primary custody of the parties' two minor children. She was also awarded approximately $1,384.00 in monthly child support payments. She was further awarded the parties' house, in which according to her testimony

---

[1] Section 523(a)(15) of the Bankruptcy Code is an alternate avenue for determining the dischargeability of marital debts. The record indicates, however, that Appellee inexplicably failed to raise the issue of § (a)(15) below.

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended § 523(a)(5) to succinctly make nondischargeable those debts "for a domestic support obligation[.]" *See* Pub. L. No. 109-8, § 215, 119 Stat. 23. However, the language of amended § 523(a)(5) does not apply to bankruptcies, such as the one presently before the court, that were commenced prior to October 17, 2005. *See id.* at § 1501.

2

there was at least $60,000.00 of equity.

The Final Judgment of Divorce, entered July 6, 2004, provides in material part:

> 3. <u>Alimony.</u> The Defendant [Mr. Jensen] shall pay to the Plaintiff [Mrs. Jensen] the sum of Fourteen Hundred Dollars ($1,400.00) per month as alimony in solido for three (3) years from the date of entry of this Final Judgment of Divorce.
>
> 4. <u>Division of Assets.</u> The marital residence . . . shall be awarded to the Plaintiff as her sole and exclusive property . . . . The Plaintiff shall be solely responsible for any outstanding mortgages on said property and she shall hold the Defendant harmless therefrom. The Plaintiff shall hold the Defendant harmless from all proceedings and any judgment in the case of [Dubecky v. Jensen] currently pending in the Chancery Court . . . .
>
> 5. <u>Debts.</u> The Defendant shall be responsible for any and all credit card debts up to Forty-Five Thousand Dollars ($45,000.00) as per the attached list . . . .
>
> . . . .
>
> 7. <u>Automobiles and Vehicles.</u> The Volkswagen Beetle shall be awarded to the Plaintiff and she shall be solely responsible for the payment on the loan and the insurance which shall remain in effect at all times and she shall hold the Defendant harmless therefrom. The Defendant shall be awarded the Dodge truck and he shall be responsible for any loans thereon and hold the Plaintiff harmless therefrom.
>
> . . . .
>
> 16. <u>Nondischargeability.</u> With respect to each party's responsibility for payment of certain debts and liabilities and their obligation to hold the other harmless for the payment thereof, the parties understand and agree that their obligation is a nondischargeable debt under the Bankruptcy Code, this obligation being part of the final financial support settlement for both parties.

The Debtor contends that the $45,000.00 credit card obligation is merely "part of the asset and liability settlement between the parties and not a support obligation[,]" and

3

thus dischargeable in bankruptcy. Conversely, Appellee argues that the debt is a support obligation. She testified that the Debtor

> . . . didn't want to be obligated to pay alimony over several years. So in lieu of paying alimony he agreed to pay the credit card debt that was in my name in addition to it. And that's what I agreed upon.
>
> And this was made by – a proposition made by him and his lawyer at the mediation.[3]

The bankruptcy court tried this matter on February 13, 2006. On February 28, 2006, the bankruptcy court issued a judgment that the credit card obligation is in the nature of support, and thus nondischargeable under § 523(a)(5). The memorandum opinion accompanying the judgment cited two factual findings to support the conclusion that the credit card obligation was originally intended to be support: "[p]rimarily" (1) paragraph 16 of the Final Judgment of Divorce was "a clear expression of the parties' actual intent" on the issue; and (2) the disparity in the parties' earning potential suggested that Appellee "could not make ends meet, and she was, therefore, relying upon payment of those debts as support." The instant appeal followed.

---

[3] Subsequent to two contempt hearing at which the Debtor did not appear (because he had already filed bankruptcy), the Fourth Circuit Court for Knox County, Tennessee entered two orders pertaining to the issue of support. On March 1, 2005, the circuit judge noted that the credit card obligation was "not clearly denominated as 'support.'" [A.R. 28, ex. 15]. On December 29, 2005, the circuit court judge nonetheless found that the obligation was "clearly in the nature of support[.]" The bankruptcy court correctly voided both orders as violations of the automatic stay.

II.

*Standard of Review*

A bankruptcy court's ruling regarding nondischargeability presents a mixed question of law and fact. *See Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 400 (6th Cir. 1998). Thus, this court applies a clearly erroneous standard to the bankruptcy court's factual findings, but reviews *de novo* the legal question of whether those foundational facts correctly prove the nondischargeability of the obligation at issue. *See id.*; *see also Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 875 (B.A.P. 6th Cir. 2001) (citing *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 623 (6th Cir. 1996) (explaining review of mixed questions of law and fact under the Lanham Act)).

III.

*Analysis*

In determining nondischargeability under § 523(a)(5) of an obligation not actually denominated as alimony, maintenance, or support, "the initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support" through the debt assumption at issue. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109 (6th Cir. 1983) (emphasis in original). "If they did not, the inquiry ends there." *Id.*[4] Appellee bears the burden of proof on this question by a preponderance of the

---

[4] If, however, such intent is found, the court must then determine whether the debt assumption actually has the effect of providing support for the recipient's daily needs and, if so, whether "the amount of support represented by the assumption is not so excessive that it is
(continued...)

5

evidence. *Grogan v. Garner*, 498 U.S. 279, 283, 291 (1991).

To decide whether an obligation is actually support, the court must consider "the traditional state law indicia that are consistent with a support obligation." *Sorah*, 163 F.3d at 401. The most oft-cited of these factors are "(1) a label such as . . . support . . . in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits." *Id.* Other state court factors to be considered include:

> the nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of the negotiation or other understandings as to the intended purpose of the assumption.

*Calhoun*, 715 F.2d at 1108 n.7; *see also* Tenn. Code Ann. § 36-5-121(i) (West 2005) (articulating similar factors).

This court agrees that the second of the bankruptcy court's two factual findings indeed bolsters Appellee's position. As noted by the bankruptcy court, the disparity in the parties' earning potential weighs in Appellee's favor, and is relevant to the state law considerations of "relative earning powers of the parties" and "age, health and work skills

---

[4](...continued)
manifestly unreasonable under traditional concepts of support." *Id.* at 1109-10.

of the parties." This court also observes that the length of the parties' marriage (twenty years) is another state law factor relevant to a higher support award.

The remaining factors, however, strongly favor the Debtor. This court first notes that it cannot agree with the bankruptcy court's primary factual finding as to the parties' intent. In addressing paragraph 16 of the Final Judgment of Divorce as an expression of intent, the bankruptcy court specifically found that

> Primarily, the structure and language of the Final Judgment itself lends credence to the [Appellee's] testimony that the parties intended for the Credit Card Debt to be in the nature of support. The Final Judgment, which was agreed upon by both parties following mediation, expressly states in the last paragraph that the parties were holding each other harmless, and that they "understand" that the obligations were "nondischargeable debt under the Bankruptcy Code," with "this obligation being part of the final financial support settlement for both parties." Trial Ex. 14. While parties cannot generally contract away their rights in bankruptcy . . . this paragraph offers a clear expression of the parties' actual intent with respect to the obligations under the Final Judgment. Both parties were represented by attorneys during the divorce proceedings, and neither can state that they did not understand the terms of the Final Judgment.

[A.R. 23, p. 10-11].

Paragraph 16, captioned "Nondischargeability," is framed by the qualifying language "With respect to each party's responsibility for payment of certain debts and liabilities ___and___ their obligation to hold the other harmless for the payment thereof . . . ." [A.R. 1, ex. A] (emphasis added). The bankruptcy court of this district has previously been presented with a Marital Dissolution Agreement ("MDA") containing identical "nondischargeability" language and remarkably similar facts. *See Crawford v. Osborne (In*

7

*re Osborne)*, 262 B.R. 435 (Bankr. E.D. Tenn. 2001). The *Osborne* MDA expressly provided that the parties would "assume, pay and hold the other party harmless from" their individual debts incurred during the marriage. *Id.* at 438. Conspicuously absent from the MDA, however, was a hold harmless clause regarding the joint debts assumed by the husband (and at issue in that case). *Id.* Similarly, in the present Final Judgment of Divorce, hold harmless language is present in the paragraphs pertaining to the house and automobile debts but is conspicuously absent from the paragraph establishing the credit card obligation.

*Osborne* addressed this discrepancy, reaching the opposite conclusion from that reached in the present case.

> This provision could be read as (A) an indemnification provision applying to all obligations of each party under the MDA; or (B) a reference to only those "certain debts and liabilities" that are directly referenced by a hold harmless provision. The court finds that the latter interpretation is the correct one. Thus, the Debtor's obligation under the MDA to pay the three joint debts at issue is not accompanied by a hold harmless agreement in favor of the Plaintiff.

*Osborne*, 262 B.R. at 440. This court agrees with *Osborne*. In the present case, paragraph 16's use of the word "and" restricts its application to only those "certain debts and liabilities" of which the parties agreed to "hold the other harmless for the payment thereof[.]" Conspicuously, the Debtor did not agree in paragraph 5 to hold Appellee harmless as to the credit card obligation.

This court must therefore disagree with the findings: (1) that a hold harmless agreement was associated with the credit card obligation; and (2) that paragraph 16's

8

"support" language "lends credence to the [Appellee's] testimony . . . . [by] offer[ing] a clear expression of the parties' actual intent[.]" To the extent that paragraph 16 offers insight into the parties' intent, it in fact strongly suggests that the credit card obligation was not meant to be support - because that obligation is the only provision not tied into paragraph 16 by a hold harmless clause. As correctly observed by the bankruptcy court, "Both parties were represented by attorneys during the divorce proceedings, and neither can state that they did not understand the terms of the Final Judgment."

Paragraph 16, therefore, should be read as stating that only the obligations accompanied by hold harmless language were intended as support, bolstering the Debtor's position in light of several of the pertinent state law factors: the labels used by the parties; the structure and language of the parties' agreement; and evidence of the parties' negotiations. *See Sorah*, 163 F.3d at 401; *Calhoun*, 715 F.2d at 1108 n.7. Additional factors further indicate that the assumption was not intended to be support.

The credit card obligation is a third-party debt rather than a direct payment to the former spouse, and is thus inconsistent with the traditional concept of support. *Sorah*, 163 F.3d at 401. The assumption is not contingent upon a future event, and is thus again inconsistent with the traditional concept of support. *Id.*

In addition, the credit card assumption is not a direct provision of daily necessities. *See Calhoun*, 715 F.2d at 1108 n.7; *Scoggins v. Scoggins*, 136 S.W.3d 211, 216 (Tenn. Ct. App. 2003) (Debt obligations such as mortgages, car notes, and medical bills "are

9

viewed as more directly associated with daily support needs." Credit card bills are not.). Also, "other lump sum or periodic payments" were provided to Appellee, namely: (1) three years of alimony; (2) the $60,000.00 equity value of the parties' home; and (3) child support payments secondary to her custody of the couple's two children.

IV.

*Conclusion*

The undersigned again recognizes that Appellee's earning capacity is less than that of the Debtor, and that she is in fact the more sympathetic of the two parties. The court further acknowledges "[t]he initial difficulty . . . that every assumption of [an] obligation in a divorce settlement at least indirectly contributes to support. The former spouse is relieved of payments on that debt and thus has funds for other purposes including necessary support." *Calhoun*, 715 F.2d at 1108. Nonetheless, "[s]upport in this broad sense results even if the assumption . . . is actually a division of property. It is clear from the statute and legislative history that Congress could not have intended that all assumptions . . . would be nondischargeable." *Id.*

Based on the applicable standard of review, this court finds error in: (1) the interpretation of paragraph 16; and (2) the absence of discussion of numerous state law factors favoring the Debtor's position. Upon this court's *de novo* review, the traditional state law factors are strongly inconsistent with a support obligation. The bankruptcy court's judgment must therefore be reversed.

10

An order consistent with this opinion will be entered.[5]

ENTER:

s/ Leon Jordan<br>United States District Judge

---

[5] Having found the credit card obligation dischargeable under *Calhoun*, this court need not address Debtor's alternate argument that § 523(a)(5) cannot apply to a third party debt unless that debt is accompanied by hold harmless language. *But see generally Calhoun*, 715 F.2d at 1107.